**R23 LAW APC**
Peng Shao (319624)
Peng@R23Law.com
633 West Fifth St. Ste. 2662
Los Angeles, CA 90071
Tel: 888-533-2948
Fax: 415-558-0230

**BARTHEL LEGAL, APC**
Nicholas Barthel, Esq. (319105)
nick@barthelbarthel.com
2173 Salk Ave., Ste. 250
Carlsbad, CA 92008
Tel: 760-259-0033
Fax: 760-536-9010

*Attorneys for Plaintiff Orhan Coskun*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ORHAN COSKUN**, an individual;<br><br>Plaintiff,<br><br>v.<br><br>**WELLS FARGO BANK, N.A.; and DOES 1 to 50,** inclusive;<br><br>Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>1. Electronic Funds Transfer Act;<br>2. California Commercial Code;<br>3. Truth in Lending Act<br><br>**Jury Trial Demanded** |

Plaintiff ORHAN COSKUN ("Plaintiff"), an individual files this Complaint and Demand for Jury Trial against Defendants WELLS FARGO BANK, N.A. ("Wells Fargo" or the "Bank"); and DOES 1 to 50, inclusive (collectively "Defendant" or "Defendants"), and based on information and belief, hereby alleges and complains as follows:

## INTRODUCTION

1. This is a case about an innocent consumer who had money fraudulently stolen from him via <u>multiple rounds</u> of unauthorized electronic fund transfers and credit cash advances – and the consumer's bank's unlawful actions in failing to protect the consumer, to prevent the fraud/theft, and to correct its own unlawful errors.

2. On or about September 16, 2024, Plaintiff discovered multiple fraudulent financial transactions had been made on his Wells Fargo bank accounts and credit card. He immediately reported and disputed these transactions with Wells Fargo, closed all of his accounts, and opened new accounts in response to these fraudulent transactions.

3. However, Wells Fargo failed to prevent or correct the processing of these initial fraudulent transactions despite Plaintiff's near-immediate and continuous disputes regarding the transactions.

4. Worse yet, just weeks later, Wells Fargo allowed and enabled a <u>secondary round</u> of fraudulent transactions on Plaintiff's newly opened accounts.

5. At the time of filing of this action, Wells Fargo has failed to protect Plaintiff from two rounds of fraud/theft, conduct reasonable investigations as required by the law, or correct the fraudulent transactions.

6. As a result of the Wells Fargo's unlawful conduct, Plaintiff has suffered real and actual damages, endured emotional distress, and sustained loss of his creditworthiness.

7. Plaintiff now brings this action for violations of (1) the Electronic Fund



Transfers Act, 15 U.S.C. § 1693, *et seq*. ("EFTA"); (2) the California Commercial Code § 11201, *et seq*. ("CCC"); and (3) the Truth in Lending Act 15 U.S.C. §§ 1601 *et seq*. ("TILA").

8. Plaintiff seeks actual, statutory, civil, and punitive damages for the harm that he has suffered.

9. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to the Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

10. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

11. All violations by Defendants were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

12. Unless otherwise indicated, the use of a Defendants' names in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

**JURISDICTION AND VENUE**

13. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 due to federal causes of action under 15 U.S.C. § 1681, and under 28 U.S.C. § 1332 due to diversity of citizenship.

14. Jurisdiction is proper in this Court because the amount in controversy exceeds the jurisdictional minimum of this Court, and this case involves the violation of Federal statutes.

15. Because all Defendants conduct business within the State of California, personal jurisdiction is established.

16. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in this judicial district; (ii) the conduct complained of herein

occurred within this judicial district; and (iii) Defendant conducted business within this judicial district at all times relevant.

## PARTIES

17. Plaintiff Orhan Coskun is a natural person and resident of Orange County, California.

18. Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(c); 15 U.S.C. § 1681a(c); and, 15 U.S.C. § 1692a(3).

19. Defendant Wells Fargo is an out-of-state Stock Corporation, with its principal place of business in Sioux Falls, South Dakota, doing business in the State of California as a bank, as an information furnisher to consumer reporting agencies, a debt collector, and as a provider of credit card and bank accounts to consumers.

20. The true names and capacities, whether individual, corporate (including officers and directors thereof), associate or otherwise of Defendants sued herein as Does 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names, pursuant to the CCP § 474.

21. Plaintiff is informed and believes, and thereon alleges that each Named Defendant and each Defendant designated as a Doe is involved in or is in some manner responsible as an officer, director, managing agent, principal, beneficiary, agent, co-conspirator, joint venturer, alter ego, third-party beneficiary, or otherwise, for the agreements, transactions, events and/or acts hereinafter described, and thereby proximately caused injuries and damages to Plaintiff. Plaintiff requests that when the true names and capacities of these DOE Defendants are ascertained, they may be inserted in all subsequent proceedings, and that this action may proceed against them under their true names.

///
///
///
///



# FACTUAL ALLEGATIONS

22. Plaintiff Orhan Coskun is an electrical engineer with a PhD from the University of Southern California. He is an immigrant from Turkey with an exemplary credit history, lives a modest life, and is careful with his finances to support his family.

23. Plaintiff is also a victim of financial fraud and theft.

24. Plaintiff has banked with Wells Fargo for over 8 years and has never executed an online money transfer or credit card cash advance.

## INITIAL ROUND OF FRAUD

25. On the morning of September 16, 2024, an unknown fraudster executed a series of fraudulent transactions from Plaintiff's Wells Fargo accounts:

   a. A $5,500 transfer was sent from one of Plaintiff's Wells Fargo Checking Accounts bearing Acct No. xxxx0308 (the "0308 Account") to a different Checking Account bearing the Acct No. xxxx0316 (the "0316 Account").

   b. A $2,000 cash advance was drawn from Plaintiff's Wells Fargo Signify Business Credit Card bearing Acct. No. xxxx2402 (the "Credit Card Account") and deposited into Plaintiff's 0316 Account.

   c. A $24,823.40 transfer was sent from the 0316 Account to an unrecognized JP Morgan Chase Bank account.

26. Plaintiff did not authorize these transactions.

27. Shortly after discovery of these fraudulent transactions, Plaintiff arrived at his local Wells Fargo branch and immediately reported the fraudulent transactions to a local Wells Fargo banker.

28. The local Wells Fargo banker then contacted Wells Fargo's fraud department regarding these fraudulent transactions.

29. That same day, Plaintiff closed all of his Wells Fargo accounts and

opened new accounts bearing new account numbers in an effort to prevent additional fraudulent transfers.

30. Plaintiff reported the fraud to the FTC, CFPB, Irvine Police Department, and the FBI.

31. On September 16, 2024, Plaintiff filed an FTC Affidavit regarding the fraudulent transactions (FTC Report No. 177579656).

32. On September 17, 2024, Plaintiff filed a police report regarding the fraudulent transactions with the Irvine Police Department (Police Report No. IPD-24-10316). Plaintiff also filed an FBI report on the same day regarding the fraud.

## SECONDARY ROUND FRAUD

33. On September 25, 2024, Plaintiff discovered another unauthorized $2,000 cash advance made on Plaintiff's newly issued credit card account, which was newly opened in response to the Initial Fraud.

34. Plaintiff again contacted Wells Fargo immediately to dispute this secondary round of fraudulent transactions.

35. Initially, Wells Fargo refused to help, and gaslit Plaintiff by asserting that this new $2,000 charge was merely the original cash advance Plaintiff reported from the first round of fraudulent transactions.

36. However, upon further inquiry, Wells Fargo admitted that this was indeed a new, unauthorized transaction.

## MULTIPLE FORMAL DISPUTES WITH WELLS FARGO

37. In addition to multiple disputes of these transactions in person, telephonically, and via Wells Fargo's online portal – Plaintiff also mailed multiple formal dispute letters to Wells Fargo.

38. On or about October 24, 2024, Plaintiff sent an initial formal written dispute ("Initial Dispute") via certified mail to Wells Fargo with supporting documents.

39. Plaintiff's Initial Dispute was delivered to Wells Fargo on November

05, 2024.

40. Wells Fargo ignored Plaintiff's Initial Dispute and refused to correct its unlawful actions.

41. On November 26, 2024, Plaintiff sent *two* second formal written dispute ("Secondary Disputes") via certified mail to two Wells Fargo addresses with all supporting documents and reports attached.

42. Plaintiff's Secondary Disputes were delivered on November 29, 2024.

43. Wells Fargo again ignored Plaintiff's Secondary Disputes and refused to correct its unlawful actions.

## WELLS FARGO FAILED
## TO PREVENT OR CORRECT FRAUD TRANSACTIONS

44. Wells Fargo failed to prevent or correct multiple fraudulent transactions on Plaintiff's accounts, executed through two separate rounds on two separate days that are weeks apart, despite the fact that Plaintiff has never once executed an online wire transfer or cash advance in his eight years of banking with Wells Fargo.

45. Despite Plaintiff's quick reporting and disputes of the fraudulent transactions, as of the date of filing of this action, Wells Fargo has failed to adequately investigate the fraud and compensate Plaintiff for damages suffered.

46. Moreover, Wells Fargo allowed additional fraudulent transactions in further damage to Plaintiff weeks after the initial round of fraudulent transaction on Plaintiff's newly opened accounts.

47. As of the date of this filing, Wells Fargo has failed to adequately respond to any of Plaintiff's multiple in person, telephonic, electronic, or mailed formal disputes.

48. Wells Fargo has also failed to conduct reasonable investigations and/or reinvestigations regarding these fraudulent transactions as required by the law.

## ACTUAL DAMAGES

49. As a direct result of Wells Fargo's unlawful actions, omissions, and



inaction, Plaintiff has suffered damage by loss of money, credit worthiness, loss of ability to purchase and benefit from credit, increased costs for credit, invasion of privacy, mental and emotional pain, anguish, humiliation and embarrassment, as well as physical manifestations of these emotional states. All such damages have been suffered in the past, are continuing to be suffered, and such damages will continue in the future.

## FIRST CAUSE OF ACTION

Violation of the Electronic Funds Transfer Act (EFTA)

*[Against All Defendants]*

50. Plaintiff hereby re-alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

51. The Electronic Fund Transfer Act ("EFTA") and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

52. The primary objective of EFTA is "the protection of individual consumers engaging in electronic fund transfers and remittance transfers." 12 C.F.R. § 1005.1(b).

53. Financial institutions have error resolution obligations pursuant to Regulation E in the event that a consumer notifies the financial institution of an error. 12 C.F.R. § 1005.11.

54. Plaintiff is a "consumer" pursuant to 12 C.F.R. § 1005.2(e).

55. Wells Fargo is a "financial institution" pursuant to 12 C.F.R. § 1005.2(i), and a "person" pursuant to 12 C.F.R. § 1005.2(j).

56. Pursuant to the EFTA, an error includes "an unauthorized electronic fund transfer." *Id*. § 1693f(f).

57. An Electronic Fund Transfer ("EFT") is any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for



the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(b)(1). Accordingly, Regulation E applies to any P2P or mobile payment transactions that meet the definition of EFT. 12 C.R.F. 1005.3(b)(1)(v); *id.*, Comment 3(b)(1)–1ii.

## INVESTIGATION RESULTS

58. "If a financial institution, within sixty days after having transmitted to a consumer pursuant to [15 U.S.C. ] § 1693d(a), (c), or (d) of this title or notification pursuant to [15 U.S.C. ] § 1693(d) of this title, receives oral or written notice in which the consumer[:] (1) sets forth or otherwise enables the financial institution to identify the name and the account number of the consumer; (2) indicates the consumer's belief that the documentation, or, in the case of notification pursuant to [15 U.S.C. ] § 1693d(b) of this title, the consumer's account, contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred," the financial institution is required to investigate the alleged error. 15 U.S.C. § 1693f(a).

59. After said investigation, the financial institution must determine whether an error has occurred and report or mail the results of such investigation and determination to the consumer within ten (10) business days. *Id*.

60. If a financial institution provides a provisional credit in the first 10 days for the amount disputed, then the financial institution is afforded forty-five (45) days after receipt of notice of error to investigate. *Id*. § 1693f(c).

61. Unauthorized EFTs are EFTs from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 12 C.F.R. 1005.2(m).

62. According to the CFPB and FDIC, when a third party fraudulently induces a consumer into sharing account access information that is used to initiate an EFT from the consumer's account, that transfer meets Regulation E's definition of an unauthorized EFT.

63. In particular, Comment 1005.2(m)–3 of Regulation E explains that an unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through robbery or fraud. As such, when a consumer is fraudulently induced into sharing account access information with a third party, and a third party uses that information to make an EFT from the consumer's account, the transfer is an unauthorized EFT under Regulation E.

64. Here, unknown fraudsters gained access to Plaintiff's Wells Fargo accounts and initiated a series of financial transactions via EFTs without his authorization.

65. Plaintiff notified Wells Fargo of these errors within sixty (60) days of their appearances on Plaintiff's account.

66. After receiving notice of the unauthorized EFT on Plaintiff's account, Wells Fargo erroneously concluded that the unauthorized EFTs were not the result of an error.

67. As a direct and proximate result of the conduct of Wells Fargo, Plaintiff was unable to reclaim funds that were fraudulently taken from their accounts within the authorized period for error resolution.

68. Upon information and belief, Wells Fargo knowingly and willfully failed to fulfill their obligations to investigate Plaintiff's unauthorized transactions and instead summarily concluded that the transfers of funds were not in error when such conclusions could not reasonably have been drawn from the evidence available to the financial institutions at the time of the investigation. 15 U.S.C. § 1693f(e)(2).

69. Upon information and belief, Wells Fargo intentionally determined that the unwanted transfers of funds were not in error due to, at least in part, the Wells Fargo's financial self-interest, i.e. to avoid their liability to Plaintiff for the unauthorized transfers pursuant to Regulation E.

70. Wells Fargo's refusal to completely reverse or refund funds to Plaintiff as required under Regulation E, § 1005.6 and 15 U.S.C. § 1693(g).



71. Pursuant to 15 U.S.C. § 1693f(d), if a financial institution determines after conducting an investigation that an error did not occur, it must, upon receipt of a request from the consumer, promptly deliver to the consumer reproductions of all documents with the financial institution relied on to conclude that such error did not occur.

72. Plaintiff demanded the investigation documentation in his formal dispute letters, however, Wells Fargo never provided these documents.

73. As a result of each of violation, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages pursuant to 15 U.S.C. § 1693m(a)(2)(A); treble damages pursuant to 15 U.S.C. § 1693f(e); limitation of liability under 15 U.S.C. § 1963g; and, reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

## SECOND CAUSE OF ACTION

<u>Violations of California Commercial Code § 11201</u>

*[Against All Defendants]*

74. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

75. Well Fargo is a "receiving bank" under California Commercial Code § 11103.

76. Plaintiff is a "customer" as defined by California Commercial Code § 11105(a)(3).

77. The requests to have wire transfers initiated were each a "payment order" under California Commercial Code § 11103.

78. Plaintiff and Wells Fargo did not have an agreed upon "security procedure" as defined under California Commercial Code § 11201.

79. As explained above, Plaintiff did not approve of the wire transfer, which was initiated without Plaintiff's consent. Thus, the transfers were not authorized transfers under California Commercial Code § 11202(a).

80. Plaintiff notified Wells Fargo of the fact that the transfers were unauthorized within statutory period defined in Section 11204 of the Commercial Code.

81. Wells Fargo is obligated to refund said fraudulent wire transfers to Plaintiffs under Section 11204 of the Commercial Code. Wells Fargo failed to do so.

As a result of Wells Fargo's failure to adhere to these statutory requirements Plaintiff was damaged in the amount of $24,823.40 plus interest as allowed by law.

## THIRD CAUSE OF ACTION

Violations of Truth in Lending Act 15 U.S.C. §§ 1601

*[Against All Defendants]*

82. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

83. The Truth in Lending Act generally precludes a credit card issuer from imposing more than $50.00 in liability for unauthorized use of a credit card. 15 U.S.C. § 1643.

84. The cash advance was an "unauthorized use" as it was not made by a person who had actual, implied, or apparent authority for such use.

85. Plaintiff received no benefit from the unauthorized use.

86. Plaintiff provided Wells Fargo with notice of the unauthorized use during the through several letters and phone calls.

87. From these communications, Wells Fargo had all of the pertinent information about the unauthorized use.

88. Because the charge was unauthorized, Plaintiff's liability was limited to no more than $50.00.

89. Nonetheless, Wells Fargo has demanded payment of the fraudulent charges in cash advances from Plaintiff.

90. As a result, Wells Fargo violated the Truth in Lending Act's unauthorized use limitation contained in 15 U.S.C. § 1643.



91. Wells Fargo's violation of the unauthorized use limitation is subject to liability and damages pursuant to 15 U.S.C. § 1640.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

1. For declaration that Defendants' practices violate the law;
2. For actual, compensatory, special, and general, damages in an amount according to proof;
3. For punitive damages in an amount according to proof;
4. For statutory penalties and punitive damages for each separate statutory violation where allowed by statute;
5. For pre- and post- judgment interest;
6. For reasonable attorney's fees and costs;
7. For injunctive relief as applicable; and
8. For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

DATED: December 11, 2024

BY: _____
Peng Shao, ESQ

**R23 LAW APC**
Peng Shao
peng@R23Law.com

*Attorney for Plaintiff Orhan Coskun*



# ELECTRONICALLY STORED INFORMATION REQUEST

This notice is to demand that you preserve all documents, tangible things and electronically stored information ("ESI") potentially relevant to any issues in the above-entitled matter. This specifically includes, but is not limited to, all information pertaining to the above matter, including specifically all recordings of any telephone communication between your company and Plaintiff.

As used in this request, "you" and "your" or "your client" refers to your organizations, and its predecessors, successors in interest, assignees, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, employees, servants, agents, attorneys, and accountants.

Much of the information subject to disclosure or responsive to discovery is stored on your client's current and former computer systems and other media and devices (such as: personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (for example and not as an exclusive list) potentially relevant information whether electronically, magnetically or optically stored.

This preservation obligation extends beyond ESI in yours or your client's care, possession or custody and includes ESI in the custody of others that is subject to your client's direction or control. You must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your client's obligation to do so, and you must try to secure their compliance.